Morning everyone. Nice reply today. Look quiet yesterday. Yes. Okay I'm gonna call the cases just as they appear on the calendar and the first up for argument is going to be Windom v. Blades. If you're the appellant and you wish to reserve time, that's fine. This clock is counting down. Good morning Miss Lorello. Good morning. Make sure that they can hear us in an item. Yes thank you. But I can't. I can't. We can't hear her. Can you hear us your honor? Now we can. Okay great. That's good. We're here. We're here in Boise. Okay so we'll hear first from the from Mr. Windom's counsel. Good morning again. My name is Lori Nakaoka and I represent Ethan Windom. Mr. Windom is a pro se petitioner from the District of Idaho. We're asking the court to vacate the District Court's decision because it doesn't comply with the Eighth Amendment and the recent Supreme Court decision in Montgomery versus Louisiana. I'm going to first address the District Court's decision on the merits and then move on to any questions the court has about the procedural issues. The facts in this case are that Mr. Windom was 16 years old when he killed his mother. There was evidence that he was suffering from mental illness signs manifested in 8th, 9th, 10th and on into 11th grade. Two doctors were of the opinion that when he killed his mother he was suffering from a psychotic break. Both doctors well respected in the legal and medical communities were of the opinion that if Mr. Windom had been properly diagnosed and properly medicated the killing would not have happened. Both were of the opinion that Mr. Windom presented good potential for rehabilitation and... The trial judge took all of this into account. I respectfully disagree. The child, if you're... It was a very, very long hearing and a very careful hearing conducted by the trial judge. The real question is whether the trial judge did enough to comply with the Supreme Court's surprising and recent decision in Montgomery. Isn't that the problem? That is the problem and I submit that the trial judge did not. The Supreme Court was very clear in Miller and the subsequent language in Montgomery that the sentencing court has to engage in a very specific analysis and that is whether the offense is the product of the youthful... Let me take you right where my questions are. I don't know what questions my colleagues may have but let But there's still a proceeding pending in the Idaho courts, is that correct? There is, your honor. And where is that right now? The Idaho Supreme Court? It's up on appeal. Okay and have you raised Montgomery? Now have you alerted the court to the existence of Montgomery? We did. We filed a motion to amend the state petition that... And I'll ask the state the same question but is the state opposed that? Yes, it has. It believes that Montgomery does not govern this case? It believes Montgomery does not govern this case. Okay, now why should this court act before the Idaho Supreme Court gets a chance to rule on this question? Well, your honor, I don't think this court should actually. I think this court can. I think the record is sufficient before the court in order, you know, for the court to actually grant a petition. But I think... The claims in the pending petition are IAC claims, ineffective assistance of counsel claims? Yes. That's what's currently pending? Ineffective assistance of trial counsel? Raise the Eighth Amendment. Yes, that's one of the Your question again... Why shouldn't we wait? Why shouldn't we wait until not only had the Idaho Supreme Court has ruled on this, but assuming that the Idaho Supreme Court rules against you until you pursued your remedies in the Supreme Court? I mean, we're in a very, very strange posture with respect to AEDPA and we're going to be in some very strange, uncharted territory here. And it seems to me, given the way that the Supreme Court treated Louisiana, that you may have a... That even if you lose in the Idaho Supreme Court, you may have a very good argument for the U.S. Supreme Court, and maybe the court will give us some additional clarity. Correct. And so we filed before the appeal. Briefs were filed. We asked for a motion to stay and obey. We renewed that motion and then it was denied and we included it in the opening brief per the instructions of the court. I think the proper remedy here is to vacate the decision and remand to the District Court for consideration in light of this petition and for the District Court to consider the motion for stay and obey and let the Idaho Court sort this out. But in the event that the court wants... If the Idaho Supreme Court were to deny you relief on the grounds of Montgomery, can you take that to the U.S. Supreme Court? I believe we can, yes. Do you think you've got a certain remedy? I hope so. So in light of Montgomery, you're just suggesting that as an alternative course of action, just to vacate the District Court's judgment and say reconsider in light of Montgomery's holding that Miller is retroactive on collateral relief. That's correct. The District Court didn't have the benefit of Montgomery. The District Court didn't have the benefit of counsel for Mr. Windham. I think the District Court would rule differently had these two things happened at the time that Mr. Windham's petition was pending in the District Court. I don't think the District Court could look at the State Court decision or the Idaho Supreme Court affirmance of that decision and conclude that it complies or comports with Montgomery. So I think the best thing for this court to do is to remand to District Court. However, I do think if the court wants to grant the petition, it could. I think the wrong decision would be to deny completely because that will leave Mr. Windham without any remedy, especially regarding his IAC claims. So I think the best thing for everyone is to start over in District Court. So just turn to Judge Bybee's comment. I'm sure everybody has read the transcript of the sentencing hearing. Yes. And the judge did say, you know, at the beginning, I have considered his youth. Right. That's insufficient under Montgomery and Miller. With due respect to the... I mean you said that Miller and Lyda Montgomery requires a specific focus on his youth, on the defendant's youth. Very clearly. How that interacts with potential for change in the future in light of the circumstances of the crime and whatnot. But what would you expect to see a trial court do today in light of Montgomery? What the sentencing court did not do. She mentioned youth in passing in her report requires under Miller. Whether the killing was an act of Mr. Windham's transient immaturity or whether it was an offense that was the result of his irreparable corruption. It's a very specific analysis that the sentencing court has to engage in. And if you look at the sentencing transcript, the sentencing judge was completely uncertain about what Mr. Windham's prospects for future rehabilitation. She says repeatedly, I don't know. I'm uncertain. I can't tell. But she felt... I didn't take her to be uncertain. I took her to be, as Judge Bybee says, it's a very lengthy sentencing hearing. I think it was about an hour long. And I'll grant you that this language, unfortunate yet transient immaturity versus a crime that reflects irreparable corruption, is I think that's what you were looking for. You know, weighing that in particular. But she mentions his youth and then goes in some length to the nature of the offense, of course. Correct. And isn't it in that vein that she talks about, I don't want to take a chance. I'm worried that this... What if he doesn't take his medications? You know, and sort of to that effect about her concern about this may being more in the latter category about irreparable corruption. It doesn't seem to be inconsistent to me. The whole thrust of Miller is that we can't condemn a child to die in prison because we're uncertain about whether or not they are going to mature. The premise is children do mature. They grow, they develop. And if we condemn a child to die in prison because of a single act without looking at their potential for rehabilitation, we're violating the Eighth Amendment. Counsel, respectfully, there's always uncertainty. And for a sentencing judge, that's a very tough spot she was in. Very tough spot. It is. I agree. However, when we look at an individual, we don't define them permanently by a single act. In most of the cases where we're going to find irreparable corruption, you're going to find a youth who has a history of criminal acts, of violence. This is not Mr. Windham. Did she have an expert that said that? I think it's common sense. Forgive me? What? I'm sorry. I just, part of that analysis I think just is common sense. We look at a person's history and character and their previous acts before we conclude that they are irreparably corrupt. The fact that a person is mentally ill does not define them as irreparably corrupt. Medicine changes. People mature. Symptoms mitigate over time, as Dr. Beaver testified to. So let me ask it this way. Is your problem with the sentencing transcript that the judge spent too much time focusing on the nature of the offense? Or is the problem that, which was horrendous, or was the problem that she didn't spend enough time talking about his youth? The problem is she didn't take his youth and everything that it entails constitutionally under the Eighth Amendment into consideration. He could have been 30 and the sentencing transcript would have read the same. She did not consider the fact that he was 16, undeveloped, immature, and she had, she had an obligation under the Eighth Amendment to take that into consideration in rendering her Eighth Amendment analysis and her sentencing decision. To be on his mental. Sorry? His mental status. Yes. That was her focus. And the unpredictability of that. That was her focus. Yes. Let me just add, before you sit down, before we hear from the state, there's some issues about procedural bars and whatnot here. Yes. Would you address them for a moment? Yes. The district court concluded that one aspect of the Eighth Amendment claim was exhausted under the doctrine of Herndon, but that the companion claim had not been raised in state court. I conceded in my opening brief that that was the case. Let me ask you, how do you split an Eighth Amendment claim? I didn't quite understand. That's a good question and I did struggle with that. And I think, in light of Montgomery, it is the same, essentially the same claim. However, I think the district court was wrong and I was wrong when we conceded that that Eighth Amendment claim had not been raised. I mean, it was exhausted. It was exhausted because the Idaho Supreme Court had the opportunity to review this claim. It was presented that to the Idaho Supreme Court in Judge Jones's opinion, dissenting opinion. It was presented in the petition for re-hearing. It was presented in the motion for, the petition for re-hearing or the motion for re-hearing. In both instances. I understood that to be just an Eighth Amendment claim. I didn't quite understand how you could split an Eighth Amendment claim that was raised here. In any event, footnotes two and three of the Idaho Supreme Court's opinion, taken in context of the opinion itself, really clearly indicate that the court addressed the Eighth Amendment issue sua sponte. And it concluded that the Eighth Amendment simply doesn't apply to its sentencing scheme. And that is in violation of Miller. It contravenes Miller. Thank you. I'll give you a minute for a break. Let's hear from the state. Thank you, Your Honor. My name is Jessica Lorello. I represent the state in this case. I apologize I could not travel to Seattle, but I certainly appreciate the court's and counsel's accommodation. If I could start where you left off, Judge Paez, on the split issue. I think actually what the federal district court was saying in that regard is, he was in the petition for a hearing that the court's opinion itself created an Eighth Amendment issue. And I think that's where the language about the split comes from. But I don't think the claim actually alleged in the petition by Mr. Windham is a split claim. It is a straight-up allegation that his sentence violates Miller. And the Eighth Amendment. Yes. So that is the claim alleged in the petition. Turning to a point that was made early on, we are indeed in a very strange posture under AEDPA in this case. And I think procedurally, generally. And one of the concerns that I have, especially with respect to a stay, if I could shed some light on what's going on in state court, is as I read the state post-conviction petition that was filed while this appeal was pending, there is no substantive Eighth Amendment claim. The claims alleged in the petition are Sixth Amendment ineffective assistance of counsel claims with respect to trial counsel and appellate counsel. But there's no substantive Eighth Amendment claim in the original petition. So there is no claim being exhausted currently that is the same as the claim that is alleged in the federal petition. So are you saying that the Idaho Supreme Court won't address the Montgomery question? So with respect to the Montgomery question, Your Honor, what happened, I believe, in district court, and I don't have all of those pleadings, but I did provide the court with the order of dismissal by the state district court on the petition. And it reflects that there was a motion to amend the petition to add the Montgomery claim. Because Montgomery, of course, had not been issued when the petition was initially filed. That petition was filed in August 18, 2015, and of course Montgomery did not issue for about five months after that. So as I understand what occurred in state post-conviction is there was a motion to amend to add Montgomery to the petition. The state court denied that motion to amend. And by the way, with respect to the Sixth Amendment claims, the petition was dismissed in state court because it is untimely. So there was no actual consideration of any of the Sixth Amendment claims. As to the Montgomery claim, the court analyzed the merits of that in the context of the motion to amend, which brings me to, I think, what could be an important point, Judge Piazzu asked, what would you expect the trial court to do today in light of Miller, the state district court's decision on the motion to amend to add a Montgomery claim answers that question. The court denied the request to amend because it concluded that Wyndham's actions did not reflect the transient immaturity of youth, and the facts established that this is one of those rare cases where fixed life is appropriate. So the state court has answered the sentencing judge, who was the same judge who presided over the post-conviction case, has answered that very question. So as to what the Idaho Supreme Court will do on the Montgomery claim, it is unclear. Certainly, as to the other claims alleged in the petition, the state would anticipate that the Idaho Supreme Court would agree that that petition is untimely and not consider the merits of those claims. And the state would anticipate that the court would also agree with the resolution of the Montgomery issue in the context of the motion to amend the petition to add that claim. So it's still the procedural postures, it's difficult to get your one's head around. So currently pending before the Idaho Supreme Court is an appeal, is it an appeal? It is an appeal from the denial of a recent trial court habeas petition, district court habeas petition. A state post-conviction petition under a uniform post-conviction procedure act. And that was denied, as you just explained. Correct. Is that right? Correct. So it's an appeal now to the Idaho Supreme Court? Right. That's right. And we don't know when they might decide that issue? We don't, Your Honor. It's very early in the appeal process. The actual order dismissing the petition was issued on February 23rd of this year. So we're still in the, I believe, record preparation stage. And what are the issues that are currently pending before the Idaho Supreme Court? No brief has been filed yet, Your Honor. So ultimately that, of course, will be up to counsel on appeal to decide that. But it would be something related to the order dismissing the petition as untimely and, I believe, the denial of the motion to amend to add the Montgomery claim. I think opposing counsel has also submitted the notice of appeal filed with the Idaho Supreme Court to this court for consideration. Okay. And that lists certainly several issues that could potentially be raised on appeal. But ultimately whether those are or are not raised will be up to whoever handles that case on appeal. But at a minimum it will be the dismissal. Well, I still think that this court should affirm the federal district court's decision on the Eighth Amendment claim. How can we do that given what's happened in Montgomery? And why shouldn't we wait for the Idaho Supreme Court to give the Idaho Supreme Court a chance to weigh in on this question? How can we make a judgment about whether Idaho has violated clearly established federal law when that federal law was only clearly established in January of this year and all we have is the order dismissing the petition in February? And I guess my concern, Your Honor, in terms of this court staying this opinion, I understand the court's concern in terms of, you know, especially with AEDPA, and certainly we would want the deference that the state is entitled to under AEDPA on any resolution of that Eighth Amendment issue. But I guess my main concern is procedurally as to the petition actually filed in district court, in federal district court for which a final judgment was entered. I don't think that that petition can go and be amended with, for example, and that's the request as I understand it on this day, is to amend it with all of these other claims that were dismissed, Sixth Amendment claims that were dismissed as untimely. So that's one of my main struggles on the stay and the nature of the request to stay is how that federal petition gets amended with all of these other claims, as opposed to Mr. Wyndham being required to raise those in a successive petition and follow that procedure. But I certainly do understand the concern about what the Idaho Supreme Court may or may not do with the Montgomery issue. But as to the point counsel made in response to the question, what would the sentencing judge do in light of Montgomery? We know the answer to that. But if this court wants to see what the Idaho Supreme Court also says in relation to that, I do understand that position. I would also, however, note that at the end of the day, the Supreme Court has never held that youth is dispositive, of course, in cases like this. Obviously, the Supreme Court has said that a fixed life sentence for a crime committed by a juvenile, a homicide crime committed by a juvenile, does not per se violate the Eighth Amendment. All that is required is the consideration of factors relative to youth. And frankly, Your Honors, I would submit that the sentencing court did consider youth. It wasn't discussed at length, certainly at the sentencing, but it was considered. Excuse me for interrupting, but right on that point, when you said that the trial court did discuss youth, I read the transcript differently. Is there more than the one reference to his youth at the very beginning, the very top of the transcript where the judge said, I have considered his youth? Is there more than that? Your Honor, if I can just get off camera for just a second so I can grab the transcript. Sure. I think it was that brief reference. I thought there was one at the end as well, but I could be mistaken about that. That said, Your Honor, to the extent it assists the court at all, in the order dismissing the state post-conviction petition, the court says it was a factor that it considered, and it did not think that this was a case where the transience, the immaturity of the individual, the defendant, was the reason for this offense. And by the way, I think that's abundantly clear in the sentencing. The whole focus was the mental illness and was it a product of that, not was it a product of his immaturity or his age. But it certainly goes to the question about trying to predict the future and whether or not he's amenable to treatment and whatnot. Could I get you to focus? You just mentioned the order conditionally dismissing the petition, and I think I might be operating with a typo here, but I want to be absolutely certain I'm not missing an order. Could you give me the date of that order again? Yes. February 23, 2016. Okay. And that is – Go ahead. I'm sorry. I attached that to a recent document I filed with the court. Okay. I'm sorry. I cannot remember the name of the document, but it was – That's okay. I've got it. Was that the – let me ask you that. Was that – the ruling on that in 2016 that you just gave us on that State petition, is that the only State habeas petition that was filed by Mr. Windham? Yes. To my knowledge, yes, Your Honor. Okay. And that's in case number 14391. That is – yes, 2015, 14391. That's correct, Your Honor. Okay. Okay. I see that I'm out of time. I just have one last question for you. So at the start of counsel's argument, she suggested that in light of Montgomery that maybe a prudent thing to do here would be to simply remand the matter back to the district court for the district court to take another look. The district court can wait, just as well wait for the Idaho Supreme Court as us, and then everything can be sorted out in the district court. And when it comes to us, it comes up on a record that we can review because our function basically is an appellate court. Right. And, you know, Judge Lodge in his order did discuss Montgomery and just said it doesn't apply here, basically. Correct. And I don't think that's correct after Montgomery. What do you say about that? Well, you know, I think there's – That procedural suggestion. As to the procedural suggestion, Your Honor, I certainly can appreciate that being an effective way to dispose of this case. My only concern that I would repeat from earlier is I don't think that should put Wyndham in the position of amending the petition to add additional claims that were alleged in the state post-conviction action. Well, I mean, any time you seek to amend a habeas petition, you have to comply with both the federal rules and I think our case law that, you know, it's tough. But thank you. And we'll have to give this all some time. Yes. Thank you, Your Honors. Okay. You have a minute for rebuttal. I just wanted to address the question of whether on remand we can bring up the Sixth Amendment claims. And I do think there's precedent for that in this court. Dickens v. Ryan, it was in the supplemental authorities letter I filed a week or so ago. In that case, it talks about Martinez and IAC claims and the fact that a person doesn't have counsel or ineffective counsel. And those claims can be amended into a habeas petition when they're unexhausted in state court. I just also want to point out Mr. Wyndham has never had the benefit of a counsel in the federal habeas or post-state post-conviction until this court appointed CJA counsel on appeal. So these issues are really just getting flushed out. He has been unrepresented in effect for many years. And this is a very active area of law, very complicated. And I just don't think it can be decided in one fell swoop at this juncture. Okay. Thank you. Thank you, counsel. We appreciate your arguments. And the matter is submitted.
judges: Paez, Bybee, Christen